A93A1024. HUBBARD v. THE STATE.
(435 SE2d 709)

COOPER, Judge.

Appellant was convicted by a jury of hindering the apprehension of a criminal, carrying a pistol without a license and carrying a firearm at a public gathering. He appeals from the judgment entered on the convictions.

This appeal arises from a shooting incident resulting in the death of a young man. Viewing the evidence in a light to support the ver-

dict, it appears that appellant, his co-defendant Dennard and several other friends were part of a larger group of young people congregating in the parking lot of the Elks Lodge in Americus, Georgia. They did not go inside because they were under 21 and alcoholic beverages were sold there. Appellant arrived with four friends in a car driven by Jeffrey Wright and owned by Wright's mother, and Dennard came with Michael Daniels in Daniels' pick-up truck. After Daniels parked his truck a little more than 100 feet away, he and Dennard joined appellant, Wright and the others around Wright's car near the front of the Lodge. Appellant had a pistol, which he placed on the front seat of Wright's car. About 15 minutes after appellant and his friends reached the parking lot, the victim emerged from the Lodge and saw appellant and his friends. He turned around and went back inside, re-emerging soon thereafter with some of his friends. He approached appellant and the group around Wright's car, clapping his hands and asking them who wanted to die first. Appellant's uncle and other older people in the crowd in the parking lot advised appellant and his friends to leave. Taking that advice, appellant and the others who arrived in Wright's car got back into the car and started to drive away, and Dennard and Daniels headed for Daniels' truck. However, the victim and his group followed Dennard and Daniels in a threatening manner. As Daniels was getting into his truck, the victim slammed the door on him while the victim's friends rocked and beat on the truck. Daniels got out of his truck with a stick but was immediately grabbed. The victim then began punching Daniels while the victim's friends held him. Wright's car, having been unable to get out the first exit route attempted, was by then passing by the area where Daniels' truck was located. Dennard ran over to the car and said to appellant, "Give me the gun." Appellant gave Dennard the gun, and after yelling at the victim to leave Daniels alone, Dennard shot the victim. Dennard then got into Wright's car and told Wright to take him home. He gave the gun back to appellant and told him to get rid of it. Appellant hid the gun in a hole in a side of a house. The following morning, appellant and his friends were picked up for questioning. During his questioning, appellant acknowledged that he had hidden the gun and showed the detective where it was. Dennard and appellant were both indicted for murder, felony murder, aggravated assault, hindering the apprehension of a criminal, carrying a pistol without a license and carrying a firearm at a public gathering. Dennard was convicted of voluntary manslaughter as a lesser included offense of murder and on all five of the other counts; appellant was acquitted of the first three charges and found guilty of the last three.

1. Appellant first enumerates as error the denial of his motion for a directed verdict.

(a) "A person commits the offense of hindering the apprehension

or punishment of a criminal when, with intention to hinder the apprehension or punishment of a person whom he knows or has reasonable grounds to believe has committed a felony he, . . . conceals or destroys evidence of the crime." OCGA § 16-10-50 (a) (2). Appellant contends that he could not be found guilty of hindering the apprehension of a criminal because he "abandoned" his crime within the meaning of OCGA § 16-4-5 when he told the police he had hidden the gun and led them to the place it was concealed. However, a person cannot abandon an already completed crime. See *Williams v. State*, 191 Ga. App. 913 (4) (383 SE2d 344) (1989). From the facts set forth above, reasonable jurors could find that appellant, knowing that Dennard had used the gun to shoot someone, concealed it with the intent of protecting himself and his friend from punishment, thereby completing the commission of the crime of hindering the apprehension of a criminal, hours before he talked to the police. Accordingly, appellant's reliance on OCGA § 16-4-5 is misplaced.

(b) "A person commits the offense of carrying a pistol without a license when he has or carries on or about his person, outside of his home, motor vehicle, or place of business, any pistol or revolver without having on his person a valid license. . . ." OCGA § 16-11-128. Appellant argues that he was not guilty of carrying a pistol "outside of *his* home, motor vehicle, or place of business" without a license. (Emphasis supplied.) Thus, the fact that he was carrying the pistol in a motor vehicle which was not his own did not negate the need for a license.

(c) "A person is guilty of a misdemeanor when he carries to or while at a public gathering any . . . firearm. . . . For the purpose of this Code section, 'public gathering' shall include, but shall not be limited to, athletic or sporting events, churches or church functions, political rallies or functions, publicly owned or operated buildings, or establishments at which alcoholic beverages are sold for consumption on the premises." (Indentation omitted.) OCGA § 16-11-127 (a), (b). Appellant contends that he was not guilty of carrying a firearm at a public gathering because he did not carry it inside the Lodge where alcoholic beverages were being sold. However, we have held that the offense of carrying a firearm at a public gathering may occur in a parking area on the grounds of and in close proximity to a public gathering. See *Farmer v. State*, 112 Ga. App. 438 (1c) (145 SE2d 594) (1965). Moreover, there was testimony from which the jury could conclude that the "younger crowd" who could not go into the Lodge often gathered in the Lodge's parking lot on Saturday nights and that on the Saturday night of the incident a large number of people were gathered there, "hanging out," eating and talking. From this, the jury could reasonably find that the parking lot itself was the site of a public gathering, so that appellant brought the pistol to a public gather-

ing when he brought it to the parking lot regardless of whether he took it inside the building. See *Jordan v. State*, 166 Ga. App. 417 (4) (304 SE2d 522) (1983). Compare *State v. Burns*, 200 Ga. App. 16 (406 SE2d 547) (1991).

As reasonable jurors could find appellant guilty of all three offenses beyond a reasonable doubt, the trial court did not err in denying appellant's motion for a directed verdict. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Citing *Sims v. Georgia*, 385 U. S. 538 (87 SC 639, 17 LE2d 593) (1967), appellant next argues that the trial court erred in denying his motion for mistrial after the prosecutor in his opening statement referred to a statement made by appellant's co-defendant which had not already been ruled admissible. The Georgia Supreme Court has held that "[a]lthough it was improper for the district attorney to refer to statements made by the defendants prior to a Jackson v. Denno hearing to determine their admissibility, there was no harm to the defendants because the reference was to 'statements,' a neutral term, rather than 'confessions.' The district attorney did not go into the content of the statements but merely referred in passing to them." *Brown v. State*, 250 Ga. 862, 865 (2) (302 SE2d 347) (1983). As in *Brown*, the prosecutor in this case referred to a "statement" rather than a "confession" of the co-defendant and did not discuss the content of the statement but merely referred to it in passing. Moreover, unlike the defendants' statements in *Brown*, the statement at issue in this case was subsequently ruled voluntary and admissible following a *Jackson v. Denno* hearing. Under these circumstances, the trial court did not err in denying the motion for mistrial on this ground.

3. In his third enumeration of error, appellant contends that the trial court should have granted his motion for mistrial after the trial court brought appellant's character into issue by referring to his first offender status. In addition to the offenses for which appellant was tried below, he was charged in a separate indictment with the offense of possession of a firearm while on first offender status. The record indicates that the prosecution and defense had agreed that this separate offense would be tried separately as contemplated in *Head v. State*, 253 Ga. 429 (3) (322 SE2d 228) (1984). Nonetheless, while swearing the jury, the trial court inadvertently mentioned the second indictment, stating as follows: "You shall well and truly try the issue formed under these two bills of indictment between the State of Georgia and the persons hereafter named and a true verdict given according to the evidence. This applies to criminal action number 90R-021 charging Henry Lee Dennard and Demetrius Hubbard with the offense of murder, felony murder, aggravated assault, hindering apprehension of a criminal, carrying a pistol without a license, carrying a deadly weapon at a public gathering. It also applies to criminal ac-

tion number 90R-202, which is a special presentment of this court handed down charging Demetrius Hubbard with the offense of possession of a firearm while on a first offender status. And you will give true verdicts according to the evidence, so help you God." (Indentations omitted.) Outside the hearing of the jury, appellant then pointed out the trial court's reference to appellant's first offender status and moved for a mistrial. The trial court denied the motion for mistrial but withdrew consideration of the second indictment from the jury's consideration without again referring to appellant's first offender status. The court then repeated the charges against Dennard and appellant in the first indictment and instructed the jury that "these will be the sole and only charges with which you will be concerned in this case."[1] The trial court did not actually state that appellant was a convicted felon, and it is likely that few if any jurors understood the court's reference to the charge of "possession of a firearm while on a first offender status." This charge was subsequently withdrawn and not referred to again. The decision to give a curative instruction rather than grant a mistrial when a defendant's character has been impermissibly drawn into issue is within the discretion of the trial court. See, e.g., *Williams v. State*, 262 Ga. 422 (5) (420 SE2d 301) (1992). Under the limited circumstances of this case, we conclude that the trial court cured its error by ordering the second indictment withdrawn, not allowing it to be referred to again and instructing the jury that it was to consider only the charges in the first indictment. Therefore, the trial court did not abuse its discretion in denying appellant's motion for mistrial.

4. Lastly, appellant argues that the trial court erred in denying his motion to sever his trial from that of Dennard because if their trials had been severed, Dennard would have provided testimony helpful to appellant in appellant's trial. See *Habersham v. State*, 190 Ga. App. 211 (1) (378 SE2d 489) (1989). Appellant's counsel stated that if severance was granted, Dennard was willing to testify that he alone fired the gun, that there was no common intent or plan to fire the gun, and that Dennard was not aided or abetted by appellant. However, the proffered testimony of Dennard goes only to the charges of murder, felony murder and aggravated assault — all charges of which appellant was acquitted. The testimony was not relevant to the charges of hindering the apprehension of a criminal, carrying a pistol without a license and carrying a firearm at a public gathering of which he was convicted. Accordingly, the denial of appellant's motion

---

[1] We note that appellant could have avoided this problem if he had been alert and objected as soon as the trial court mentioned two indictments. We hesitate to call this a waiver, however, as we acknowledge that it would have been awkward at best to object while the court was in the process of administering the oath to the jury.

to sever cannot be reversible error.

*Judgment affirmed. Beasley, P. J., and Smith, J., concur.*

DECIDED AUGUST 27, 1993.

*T. Lee Bishop, Jr.,* for appellant.
*John R. Parks, District Attorney,* for appellee.